UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

PAUL ALAN OSBORN,

                Petitioner,                Case No. 1:16-cv-836

v.                                          Honorable Gordon J. Quist

SHANE JACKSON,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

       This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner Paul Alan Osborn is presently incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan. On March 21, 2013, following a two-day bench trial, Judge Timothy G. Hicks of the Muskegon County Circuit Court convicted Petitioner of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, resisting and obstructing a police officer, MICH. COMP. LAWS § 750.81d, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and three counts of felony firearm, MICH. COMP. LAWS § 750.227b. On April 26, 2013, the court sentenced Petitioner as a habitual offender-fourth offense, MICH. COMP. LAWS § 769.12, to concurrent terms of imprisonment of 44 to 70 years on the assault conviction, 3 to 15 years on the resisting and obstructing conviction, and 4 to 20 years on the felon in possession of a firearm conviction. Those concurrent sentence were consecutive and subsequent to concurrent sentences of 2 years on each of the felony firearm convictions.

Petitioner appealed his convictions to the Michigan Court of Appeals. The court of appeals affirmed the trial court by unpublished opinion dated February 4, 2014. *People v. Osborn*, No. 316228, 2014 WL 5364052 (Mich. Ct. App. Oct. 21, 2014). Petitioner applied for leave to appeal to the Michigan Supreme Court. On June 30, 2015, that court denied leave. *People v. Osborn*, 865 N.W.2d 12 (Mich. 2015). Petitioner did not file a petition for certiorari in the United States Supreme Court.

On June 27, 2016, Petitioner filed his petition for writ of habeas corpus in this Court raising four issues:

> I. THE EVIDENCE OF ASSAULT WITH INTENT TOO [sic] KILL WAS INSUFFICIENT; PETITIONER'S ACTIONS EXHIBITED, AT MOST, RECKLESSNESS, AND HIS CONVICTION SHOULD BE REVERSED OR REDUCED TO ASSAULT WITH INTENT TO DO GREAT BODILY HARM.
>
> II. THE PROSECUTOR DENIED PETITIONER A FAIR TRIAL BY SHIFTING THE BURDEN OF PROOF AND "TESTIFYING" TO DAMAGING HEARSAY STATEMENTS ALLEGEDLY MADE BY UNPRODUCED WITNESSES; COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT.
>
> III. PETITIONER WAS DENIED A FAIR TRIAL BY POLICE OFFICERS' OPINION TESTIMONY AS TO PETITIONER'S GUILT OF ASSAULT WITH INTENT TO KILL
>
> IV. THE TRIAL COURT IMPROPERLY RELIED ON PETITIONER'S LACK OF REMORSE IN SENTENCING TO A LENGTHY TERM OF YEARS.

(Pet. Attachment C, ECF No. 1-3, PageID.108-111.) On January 11, 2017, Respondent filed an answer to the petition, (ECF No. 7.), along with the state-court record, pursuant to Rule 5, Rules

Governing § 2254 Cases, (ECF No. 8).[1]  Respondent contends that Petitioner's habeas claims have

no merit, are procedurally defaulted, or are not cognizable on federal habeas revew.  Upon review

and applying the standards required by the Antiterrorism and Effective Death Penalty Act of 1996,

PUB. L. 104-132, 110 STAT. 1214 (AEDPA), I find that Petitioner's claims are without merit.

Accordingly, I recommend that the petition be denied.

## Factual background

The Michigan Court of Appeals offered this synopsis of the facts underlying

Petitioner's criminal prosecution:

> Defendant's convictions arise from the shooting and injuring of police officer
> Monica Shirey.  On December 7, 2012, defendant drank alcohol and took some of his
> wife's Klonopin.  At some point that night, or in the early morning hours of
> December 8, defendant attacked and beat his wife.  She escaped to the next-door
> neighbor's house, where she called the police.  Robert Bennett, the next-door
> neighbor, and TE, defendant's wife's son who was at the Bennett home at the time,
> then walked next door to defendant's home.  While looking through a window, both
> men observed defendant holding and loading a gun.  According to TE, defendant
> placed three guns on a table and said, "people are gonna die tonight."  Defendant
> walked outside to TE and Bennett and informed the two that he was not mad at them
> and that he only wanted to kill his wife.  At this point, one of defendant's guns
> accidentally discharged, striking Bennett in the leg.  Bennett then returned to his
> home and called the police.

> Later, as the police began to arrive, TE and defendant walked back to
> defendant's house.  Defendant went into his bedroom and reloaded the gun he was
> holding.  Defendant and TE left defendant's house and walked back toward his
> driveway.  According to TE, defendant said, "I'm at least taking one of 'em down
> with me" and "it'll be done quick."  A group of officers arrived and defendant
> approached them from about 100 feet away.  An officer shined his flashlight at

---

[1]The Rule 5 materials include several transcripts of the trial court proceedings.  The transcripts shall be
referenced as follows:

| | |
|---|---|
| January 28, 2013 Pretrial Hearing Transcript | (Pretrial Hr'g Tr., ECF No. 8-2, PageID.___) |
| March 20, 2013 Trial Transcript (Volume 1) | (Trial Tr. I,  ECF No. 8-3, PageID.___) |
| March 21, 2013 Trial Transcript  (Volume 2) | (Trial Tr. II, ECF No. 8-4, PageID.___) |
| April 26, 2013 Sentencing Transcript | (Sentencing Tr., ECF No. 8-5, PageID.___). |

defendant, and defendant fired at the officers. Defendant's shot hit Shirey in the legs. After defendant was in custody, he asked an officer, "Did I kill her?" The officer informed defendant that he had not and defendant responded, "That's too bad." Defendant also asked an officer how his "buddy was doing" in reference to Shirey.

*Osborn*, 2014 WL 5364052 at *1 (footnote omitted)[2].

The trial court heard testimony from the neighbor, Robert Bennett; his girlfriend, Dawn Dewitt; Petitioner's wife, Brandie Osborn; her son, TE; two of the four officers Petitioner fired at, Officer Robert Dudka and Sergeant Monica Shirey; other investigating officers at the scene, Deputy Daimion Cathey, Deputy Tom Johnson, Deputy Austin Aamodt; and firearms expert Michigan State Police Sergeant Russell Karsten. Petitioner was the only witness that testified for the defense. The testimony did not reveal many inconsistencies between the accounts of that early morning. Even Petitioner could not dispute the testimony elicited from the prosecution's witnesses. The only real dispute was Petitioner's intention when he fired the shot and hit Sergeant Shirey.

Petitioner testified that he was trying to commit suicide by having the police kill him. (Trial Tr. II, ECF No. 8-4, PageID.479.) He claims he was trying to provoke the officers to fire on him and that is why he pointed the shotgun at them and fired the shot. (Id., PageID.480.) But, Petitioner testified that he did not aim at any target and he was purposefully firing down so that he either would not hit the officers or would not kill them. (*Id*., PageID.480, 482-483.) Essentially, Petitioner testified that it was obvious he did not intend to kill, because nobody died. Petitioner testified he was an excellent marksman who would have killed anything he intended to kill. (*Id*., PageID.473, 481.) Petitioner acknowledged that he acted recklessly, but he disclaimed any intent to kill. (*Id*., PageID.483, 490.)

---

[2]The Michigan Court of Appeals referred to Brandie Osborn's son, Petitioner's stepson, by his initials because he was a minor at the time of the incident. I will do likewise.

Other witnesses, however, offered testimony that suggests Petitioner may have intended to kill a police officer.  Robert Bennett admitted or acknowledged that, on the night of the incident, he told police that Petitioner said he was going to shoot a cop.  (Trial Tr. I, ECF No. 8-3, PageID.233-234, 252-253.)  Dawn Dewitt testified that Petitioner expressed his intention to kill his wife, himself, and whoever else.  (*Id*., PageID.271-272.)  She understood the "whoever else" to mean police officers.  (*Id*.)  TE testified that, over the course of the incident Petitioner stated "people are gonna die tonight[,]"  "I'm at least taking one of 'em down with me[,]" and "it'll be done quick." (*Id*., PageID.321, 341.)  Officer Robert Dudka testified that when he shined his flashlight and saw Petitioner in the beam of light that Petitioner was aiming his shotgun directly at the officers; Petitioner was acting offensively.  (*Id*., PageID.379-380.)  Officer Dudka also testified that after Petitioner had been cuffed that he was sarcastically asking how the shot officer was doing.  (*Id*.) Deputy Tom Johnson testified that Petitioner repeatedly asked "Did I kill her?"  When the deputy told him no, Petitioner responded, "[T]hat's too bad."  (Trial Tr. II, ECF No. 8-4, PageID.443.) Deputy Austin Aamodt testified that he accompanied Petitioner on the ambulance ride to the hospital.  Petitioner told Deputy Aamodt that Petitioner was not able to reload fast enough to get another shot off and Petitioner again wondered aloud whether he had killed the officer he hit.  (*Id*., PageID.449-450.)

### Discussion

I.     AEDPA standard

This action is governed by the AEDPA.  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The

AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it

decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

II.     Sufficiency of the evidence

Petitioner argues that, because he says he did not intend to kill Sergeant Shirey, and because his lack of intention to kill is further evidenced by the fact that he did not kill her, there was insufficient evidence of his intent to kill. The Michigan Court of Appeals disagreed:

> Defendant first argues that the prosecution presented insufficient evidence to convict him of assault with intent to commit murder.

In ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. A reviewing court is required to draw all reasonable inferences and make credibility choices in support of the trier of fact's verdict. [People v. Strickland, 293 Mich App 393, 399; 810 NW2d 660 (2011) (quotation marks and brackets omitted).]

"The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Lawton*, 196 Mich.App 341, 350; 492 NW2d 810 (1992). Defendant only challenges the finding that he acted with the intent to kill. "[S]pecific intent to kill is the only form of malice which supports a conviction of assault with intent to commit murder." *People v Gjidoda*, 140 Mich App 294, 297; 364 NW2d 698 (1985). "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Here, defendant was seen in a room with guns where he stated, "people are gonna die tonight." Bennett's girlfriend testified that defendant made statements about taking out police officers that night. As the police began to arrive, defendant reloaded his gun and stated, "I'm at least taking one of 'em down with me" and "it'll be done quick." Defendant admitted that when he approached the officers, he was trying to shoot in their general direction. After shooting his gun at Shirey, defendant asked, "Did I kill her?" And, when told "no," defendant responded, "That's too bad." Thus, defendant's statements before and after the shooting sufficiently established that defendant intended to kill Shirey. Moreover, defendant's use of a gun, an "instrument ... naturally adapted to produce death," also supports a finding that defendant intended to kill Shirey. *Taylor*, 422 Mich at 568. Accordingly, we find that sufficient evidence existed for a rational trier of fact to conclude that defendant intended to kill Shirey.

*Osborn*, 2014 WL 5364052 at *1-2 (footnote omitted).

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to

weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues

of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*,

506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence

supporting the conviction, in the light most favorable to the prosecution, with specific reference to

the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v.

Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

       The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of

fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  Moreover, because both

the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two

levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by

*Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the

trier-of-fact's verdict, as dictated by AEDPA.'"  *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)

(en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).  This standard erects "a

nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence

grounds.  *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

       The Michigan Court of Appeals applied the *Jackson* standard.  The court of appeals

cited *People v. Strickland*, 810 N.W.2d 660 (Mich. Ct. App. 2011), for the sufficiency standard.  The

*Strickland* court, in turn, relied on *People v. Wolfe,* 489 N.W.2d 748 (Mich. 1992), and *People v.

Nowack*, 614 N.W.2d 78 (Mich. 2000).  *Wolfe* and *Nowack*, in turn, cite *Jackson* as the source of the

standard.  Thus it cannot be said that the standard applied by the court of appeals was contrary to

clearly established federal law.

Moreover, the Michigan Court of Appeals applied the standard reasonably. Relying on the circumstantial evidence of Petitioner's statements before and after the shooting and his actions during the incident, the court of appeals concluded there was sufficient evidence to establish that Petitioner intended to kill Sergeant Shirey. The court of appeals' factual findings in support of its conclusion are reasonable on the record.

Petitioner invites the Court to turn the *Jackson* standard on its head by pointing to the evidence that supports a finding that he did not intend to kill Sergeant Shirey. *York v. Tate*, 858 F.2d 322, 330 (6th Cir. 1988) ("[T]he district court turned the *Jackson* standard on its head . . . [r]ather than asking whether *any* reasonable juror could have found petitioner guilty, the district court considered whether any reasonable juror could have found the petitioner *not* guilty."). The quantum of evidence that supports Petitioner's position on the issue is not material. The only question is whether the evidence, viewed in a light most favorable to the prosecution, would support finding intent to kill beyond a reasonable doubt. The Michigan courts' conclusions that there was sufficient evidence of intent is consistent with *Jackson* and well supported by the record.

In arguing about the insufficiency of the intent evidence, Petitioner also makes reference to the defense of involuntary intoxication.[3] The court of appeals flatly rejected the defense substantively and procedurally:

> Defendant nevertheless argues that he did not possess the specific intent to kill because he was involuntarily intoxicated during the incident. "[T]he defense of

---

[3]Although criminal defendants are certainly entitled to offer inconsistent defenses, Petitioner's argument here points out the potential folly of the practice. On the one hand, Petitioner asked the trial court to conclude that he was so involuntarily intoxicated that he was temporarily insane and could not form the intent necessary to commit the charged crime. On the other hand, Petitioner asked the trial court to conclude that he was so aware and cognizant, and so skilled as a marksman, that he intended to only cause great bodily harm, not to kill, when he aimed his shotgun at the advancing police officers and fired. The prosecutor focused his cross examination of Petitioner on this inconsistency, describing the two states of being as "out of body" Paul and "with it" Paul. *See, e.g.,* (Trial Tr. II, ECF No. 8-4, PageID.511.)

involuntary intoxication is part of the defense of insanity." *People v. Caulley*, 197 Mich App 177, 187; 494 NW2d 853 (1992). Under MCL 768.20a, a defendant must provide notice to the trial court that he is planning to raise an insanity defense. Defendant did not provide such a notice in this case. Defendant's failure to provide a notice of insanity defense precluded him from offering evidence at trial in support of that defense. *People v. Wilkins*, 184 Mich.App 443, 449–50; 459 NW2d 57, 60 (1990). Of more importance, defendant does not offer any substantive evidence to suggest that he was involuntarily intoxicated at the time of his crimes. There is certainly no evidence that defendant became involuntarily intoxicated on alcohol. *See Caulley*, 197 Mich.App at 187 (citations omitted) ("Voluntary or self-induced intoxication is caused by substances which the defendant knows or ought to know have the tendency to cause intoxication and which he knowingly introduced or allowed to be introduced into his body").

With regard to his intoxication on his wife's prescribed Klonopin, there is similarly no evidence that defendant was entitled to an involuntary intoxication defense. Indeed, defendant does not dispute that he voluntarily ingested the Klonopin, which he was not prescribed, in conjunction with alcohol. There was also testimony that defendant had previously taken the drug, and thus it cannot be shown that defendant did "not know or have reason to know that the prescribed drug is likely to have [an] intoxicating effect." *Id.* at 188. Moreover, defendant had ingested alcohol and, therefore, cannot show that "the prescribed drug [again, defendant himself was not prescribed Klonopin], not another intoxicant . . . caused the defendant's intoxicated condition." *Id.* Lastly, defendant cannot establish that, as a result of his ingestion of unprescribed Klonopin, he was rendered legally insane at the time he shot Shirey. *Id.* In sum, even if defendant had properly raised the involuntary intoxication defense, there is no indication that he could prove that he was involuntarily intoxicated at the time of these crimes. The trial court was thus permitted to find that defendant was sane at the time of the shooting and that defendant possessed the specific intent to kill necessary to convict of assault with intent to commit murder.

*Osborn*, 2014 WL 5364052 at *2-3.

It is the prerogative of the state to define when a defense is available to a particular crime. *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging "the general rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer

to state-court interpretations of the state's laws . . . .") The State of Michigan offers a defense of involuntary intoxication to specific intent crimes. A critical element to the defense, however, is missing in Petitioner's case–the ingestion of the intoxicant must be involuntary. In *People v. Smith*, No. 322283, 2015 WL 5952074 at *3 (Mich. Ct. App. Oct. 13, 2015), the court explained:

> "Involuntary intoxication is intoxication that is not self-induced and by definition occurs when the defendant does not knowingly ingest an intoxicating substance, or ingests a substance not known to be an intoxicant." *People v. Caulley*, 197 Mich.App 177, 187; 494 NW2d 853 (1992) (quotations omitted). In the trial court, defendant argued that his use of clonazepam, when combined with alcohol, could "create an autonomic effect, which results in sleepwalking or sleep driving." It is undisputed that defendant voluntarily ingested both his medication and alcohol. However, Michigan has recognized that the use of prescription medications can cause involuntary intoxication under certain circumstances. *Id.* at 188. A defendant pursuing such a defense must establish three elements: (1) that the defendant did "not know or have reason to know that the prescribed drug is likely to have the intoxicating effect [,]" (2) that "the prescribed drug, not another intoxicant, . . . caused the defendant's intoxicated condition[,]" and (3) "that as a result of the intoxicated condition, [the defendant] was rendered temporarily insane." *Id.*

*Smith*, 2015 WL 5952074 at *3. The court of appeals noted that Petitioner offered no evidence of regarding any of the elements. Indeed, the evidence indicated that Petitioner had reason to know that Klonopin caused an intoxicating effect. The state court ruled the defense was not available under these circumstances.

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir.

2013) (quoting *Bradshaw*, 546 U.S. at 76). Accordingly, the state courts' determinations regarding the availability of the involuntary intoxication defense to the crime charged, bind this Court; they are "axiomatically correct" and conclusively resolve Petitioner challenge regarding involuntary intoxication. Under the circumstances, the state court determinations were neither contrary to nor an unreasonable application of clearly established federal law and they were well supported by the record. Therefore, Petitioner is not entitled to habeas relief.

### III. Prosecutorial misconduct

Petitioner next complains that his trial was rendered unfair by instances of prosecutorial misconduct and that his counsel was ineffective because he failed to object. The instances of prosecutorial misconduct fall into two categories: (1) questions that suggested Petitioner had the burden of proof;[4] and (2) questions that had the effect of introducing impermissible hearsay testimony from Petitioner's sister and two veterans who encountered Petitioner earlier that night.[5]

The Michigan Court of Appeals determined that the prosecutor's questions did not constitute an impermissible shifting of the burden of proof:

"A fundamental pillar of our legal system is that a person is presumed innocent until proven guilty." *People v. Rosales*, 160 Mich App 304, 312; 408 NW2d 140 (1987). "Accordingly, the prosecution may never shift its burden to prove that defendant is guilty beyond a reasonable doubt and obligate the defendant

---

[4] Petitioner complains that "[t]he prosecutor began his cross examination by asking whether there would be expert testimony from a toxicologist or a doctor on the effects of Klonopin to corroborate Defendant's testimony, and Mr. Osborn had to answer 'no.'" (Pet. Attach A, ECF No. 1-1, PageID.39.) He also complains that "[i]n response to Mr. Osborn's testimony that he has good aim and purposefully did not aim at center mass when he fired the shotgun, the prosecutor stated that no one else can corroborate that Defendant had good aim." (*Id.*)

[5] Petitioner notes that "while cross-examining Mr. Osborn, the prosecutor asked Defendant about out-of-court conversations with the director of the VA and another person, who, according to the prosecutor, questioned what Mr. Osborn said about his rank and what he did in the service" and "[t]he prosecutor also told Defendant that when his sister talked to Detective Schultz, she said he was a mere repairman in the Air Force in order to impeach his claim that he was an expert marksman in the military." (Pet. Attach A, ECF No. 1-1, PageID.39-40.) The prosecutor did not present any of these persons as witnesses at trial.

to prove his innocence." *Id.* "However, where a defendant testifies at trial or advances, either explicitly or implicitly, an alternate theory of the case that, if true, would exonerate the defendant, comment on the validity of the alternate theory cannot be said to shift the burden of proving innocence to the defendant." *People v. Fields*, 450 Mich 94, 115; 538 NW2d 356 (1995). "Although a defendant has no burden to produce any evidence, once the defendant advances evidence or a theory, argument on the inferences created does not shift the burden of proof." *Id.* "[C]ommenting on a defendant's failure to call or ask particular questions of a witness 'does not have the effect of shifting the burden of proof unless it taxes the exercise of the defendant's right not to testify. . . .' " *Id.* at 111 n. 21 (citation omitted). Here, defendant testified that he took Klonopin and drank alcohol, and he testified that he was not himself the night of the shooting. Defendant also testified that he was an expert marksman. By offering this testimony, defendant advanced "an alternate theory of the case," namely that he did not possess the specific intent necessary to commit the crime due to his mental state and because if he wanted to kill, he would have aimed for a head or torso. *Fields*, 450 Mich at 115. We therefore find that "the prosecution, by commenting on the nonproduction of corroborating [ ] witnesses, [was] merely pointing out the weakness in defendant's case" and did not "improperly shift [ ] the burden of proof to the defendant." *Id.* at 112 (citation omitted).

*Osborn*, 2014 WL 5364052 at *3. The court of appeals determination is consistent with federal law on this issue. As the United States District Court for the Eastern District of Michigan has noted:

> Notwithstanding the burden of proof and presumption of innocence, a prosecutor may comment on a defendant's failure to call witnesses or offer other evidence to support his factual theories so long as the prosecutor's comment does not implicate a defendant's right not to testify. *See United States v. Bautista*, 23 F.3d 726, 733 (2d Cir.1994); *United States v. Williams*, 990 F.2d 507, 510 (9th Cir.1993); *United States v. Sensi*, 879 F.2d 888, 900 (D.C.Cir.1989); *United States v. Dahdah*, 864 F.2d 55, 59 (7th Cir.1988). It is well "established that the government may comment on a defendant's failure to call witnesses to support his factual theories." *Bautista*, 23 F.3d at 733; *accord United States v. Robles–Vertiz*, 155 F.3d 725, 731 (5th Cir.1998).

*Richards v. Berghuis*, No. 4:13-cv-13763, 2014 WL 3708844 at *6 (E.D. Mich. May 6, 2014) (report and recommendation, adopted 2014 WL 3708978 (E.D. Mich. Jul. 28, 2014), *certificate of appealability denied*, No. 14-2106 (6th Cir. Apr. 16, 2015)).

In this instance, however, there was really no risk that the trier of fact might have been confused by misstatements regarding the burden of proof. "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Petitioner cannot show that the alleged misconduct prejudiced him during his bench trial. Unlike a jury, a trial judge, sitting as the trier of fact, possesses an understanding of the law, allowing him to ignore errors and decide a case based solely on evidence properly admitted at trial. *See United States v. Joseph*, 781 F.2d 549, 552 (6th Cir. 1986); *People v. Taylor*, 628 N.W.2d 55, 62 (Mich. Ct. App. 2001); *see also Hargrave-Thomas v. Yukins*, 236 F. Supp. 2d 750, 778-79 (E.D. Mich. 2002) (showing prejudice from prosecutorial misconduct in a bench trial is more difficult than demonstrating prejudice in a jury trial, because a judge presiding over a bench trial is presumed to know the law and apply it in rendering the verdict), *rev'd and remanded on other grounds*, 374 F.3d 383 (6th Cir. 2004).

Muskegon County Circuit Court Judge Timothy G. Hicks is an experienced jurist. There can be no doubt he is familiar with the burden of proof in a criminal proceeding. He would not be swayed by a prosecutor's misstatement regarding that burden if, in fact, such a misstatement had been made here. Moreover, Judge Hicks stated the standard by which he evaluated the evidence on the record: "The prosecutor must prove each element of the crime beyond a reasonable doubt. The defendant is not required to prove his innocence or do anything." (Trial Tr. II, ECF No. 8-4, PageID.517.) Judge Hicks specifically noted that the prosecutor had proven Petitioner's intent to kill beyond a reasonable doubt. (*Id*., PageID.519.) The court noted that there was no testimony supporting an insanity defense. (*Id*., PageID.521.) In short, the questions by the prosecutor regarding the absence of expert medical testimony or corroborating testimony regarding Petitioner's

acumen as a marksman were not improper burden-shifting. But, even if the questions were improper, Petitioner cannot show prejudice because Judge Hicks was not misled regarding the burden of proof. Petitioner, therefore, is not entitled to habeas relief as the result of these instances of alleged prosecutorial misconduct.

The same result follows with regard to Petitioner's argument that the prosecutor improperly introduced hearsay testimony through his questions. The Michigan Court of Appeals acknowledged that the questions were improper. *Osborn*, 2014 WL 5364052 at *4. Nonetheless, the court of appeals concluded that Petitioner was not entitled to relief because he had demonstrated no prejudice. The court of appeals explained that the trial court was presumed to know that the statements of counsel were not evidence. Petitioner offered nothing to overcome that presumption.

For the reasons stated above with regard to Petitioner's burden-shifting argument, the determinations of the Michigan Court of Appeals are neither contrary to, nor an unreasonable application of, clearly established federal law. The factual determinations upon which the conclusions rest are well supported in the record. Accordingly, Petitioner is not entitled to habeas relief.[6]

---

[6] The absence of prejudice forecloses not only the prosecutorial misconduct claim, but Petitioner's ineffective assistance claim as well. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. That is the case here. As the court of appeals noted: "the prosecution's questions were not evidence, there is no evidence that the trial court improperly relied on or considered the statements, defendant himself confirmed his sister's statement, and the record contains overwhelming evidence supporting the trial court's verdicts independent of the challenged statements." *Osborn*, 2014 WL 5364052 at *4. That conclusion is neither contrary to, nor an unreasonable application of, *Strickland.*

IV.     Opinion testimony as to Petitioner's guilt

Petitioner contends that Officer Dudka offered impermissible opinion testimony when he testified that he believed Petitioner intended to kill him. Petitioner further contends that Officer Johnson and Deputy Aamodt did the same when they testified that Petitioner was not remorseful. Petitioner claims that the testimonies were inadmissible because they embraced ultimate issues to be decided by the trier of fact. Petitioner equates opinion testimony regarding his intent and remorsefulness to testimony regarding his guilt. Admission of the testimony, Petitioner argues, violated his due process rights.

The Michigan Court of Appeals rejected Petitioner's argument at its premise:

> Defendant next argues that two officers improperly testified to defendant's lack of remorse at the scene and that an officer improperly testified that defendant intended to kill him. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." MRE 704. However, "a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense." *People v. Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985). The testimony that defendant lacked remorse after the shooting did not constitute an opinion of a defendant's guilt or innocence. *See People v. Paquette*, 214 Mich.App 336, 342; 543 NW2d 342 (1995). Defendant's conduct after the shooting was relevant to the determination of whether he possessed the specific intent required for a conviction of assault with intent to commit murder, and the statements were not opinions regarding defendant's guilt or innocence, but were merely statements that had bearing on defendant's intent. *Id.* Moreover, we find that the officer's testimony that he felt that defendant intended to kill him was proper. Under MRE 701, a lay witness may testify about opinions or inferences that are "rationally based on the perception of the witness." Here, the officer was explaining his personal perception of what occurred during his encounter with defendant, which was proper.

*Osborn*, 2014 WL 5364052 at *4 (footnote omitted). Put simply, though the court of appeals recognized that under state law opinion testimony regarding a defendant's guilt is inadmissible, it

concluded that the challenged testimonies were admissible because they did not express an opinion as to Petitioner's guilt.

To establish his entitlement to habeas relief, Petitioner must show that the decision is contrary to, or and unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or he must show that the factual determinations upon which the decision is based are unreasonable on the record. Petitioner has not identified any Supreme Court case holding that the opinion testimony of a witness concerning the guilt or innocence of a criminal defendant violates the Due Process Clause. Instead, he cites state court decisions, which cannot serve as the basis for habeas relief, and the Sixth Circuit Court of Appeals decision in *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988).

In *Cooper*, the Sixth Circuit held that it was fundamentally unfair and a violation of due process to permit a detective to testify as an expert witness that all the evidence linked the petitioner, and no one else, to the crime. In that case, a police officer testified that "[t]he only evidence we found that would link anyone to this crime would be [the defendant]." *Id.* The court noted that "the police officer was [impermissibly] permitted to testify to his own, personal opinion that such evidence as there was against other suspects was insufficient to justify their arrest . . . . This opinion suggests to the jury the guilt of the accused and the innocence of other suspects." *Id.* (quotation marks omitted). Consequently, the Sixth Circuit found that "[t]he opinion-testimony had a direct influence on the jury's consideration of petitioner's guilt or innocence." *Id.* at 287. The court found that the trial court committed error with regard to each of the petitioner's three grounds for relief, and when considered cumulatively, the errors produced a trial setting that was fundamentally unfair. *Id.* at 288.

*Cooper* was decided before enactment of the AEDPA. It expressly relies upon: (1) state court authorities, rather than federal law as clearly established by the Supreme Court; and (2) the cumulation of error, a practice the Supreme Court has never held would support habeas relief. *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002) ("The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief."). The continuing vitality of *Cooper* after enactment of the AEDPA is questionable. Since Enactment of the AEDPA, courts often distinguish the *Cooper* decision. *See, e.g., United States v. Cobb*, 397 F. App'x 128 (6th Cir. 2010); *Arnold v. Palmer*, No. 1:11-cv-840, 2016 WL 4442810 (W.D. Mich. Jul. 25, 2016); *Sanford v. Smith*, No. 2:11-cv-10748, 2013 WL 5913948 (E.D. Mich. Oct. 24, 2013); *Dorsey v. Banks*, 749 F.Supp.2d 715 (S.D.Ohio 2010). Whatever persuasive force Cooper retains, it is not clearly established federal law and, thus, cannot form the basis for habeas relief.

Moreover, the court of appeals' factual determinations regarding the nature of the challenged testimony are reasonable on the record. The witnesses were not testifying regarding whether or not the evidence sufficed to establish guilt. Indeed, they were not testifying regarding their investigation of the crimes, as is often the case when police officers testify. They were testifying regarding what they witnessed as Petitioner committed the crime, and immediately thereafter, as well as the inferences they drew from their observations. Such testimony is admissible under Michigan law and did not render the trial fundamentally unfair. Accordingly, Petitioner is not entitled to habeas relief.

V.    The consideration of Petitioner's remorsefulness in sentencing

Petitioner complains that the trial court improperly considered his lack of remorse at sentencing. Petitioner contends that was improper under the Fourteenth Amendment, because the court imposed sentence based on inaccurate information; the Fifth Amendment, because it violates Petitioner's right against self-incrimination; and state law. The Michigan Court of Appeals did not expressly address the constitutional claims, but it rejected Petitioner's challenge under state law:

> Defendant finally argues that the trial court improperly considered defendant's lack of remorse during sentencing. "A sentencing court cannot base a sentence even in part on a defendant's refusal to admit guilt." *People v. Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007). "However, evidence of a lack of remorse can be considered in determining an individual's potential for rehabilitation." *Id.* Here, the trial court noted at sentencing that it was taking into account "how much if any opportunity [defendant] should have to re-enter society." During this discussion, the trial court noted that it took into account defendant's "absolute lack of remorse" regarding the incident. Thus, the trial court merely took into account defendant's lack of remorse for what happened to Shirey in determining that defendant was likely unable to be rehabilitated in a way to safely re-enter society. Moreover, the trial court sentenced defendant within the applicable sentencing guidelines range and provided an adequate rationale for imposing that sentence. Reversal is unwarranted. *See id.* at 105–106.

*Osborn*, 2014 WL 5364052 at *5.

 "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 131 S. Ct. at 14; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S.

67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

A.      Fourteenth Amendment

Although many sentencing issues are nothing more than state law claims, a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker,* 404 U.S. at 447;*United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner contends the trial court sentenced him based on misinformation when it stated that Petitioner showed absolutely no remorse. It is certainly true that Petitioner testified that he was remorseful:

| Petitioner's counsel: | It's an unfortunate thing that happened and you acknowledge that? |
|---|---|
| Petitioner: | Yes, I do. |
| Petitioner's counsel: | You're remorseful today? |
| Petitioner: | Oh definitely. For sure– |

(Trial Tr. II, ECF No. 8-4, PageID.489.)  Petitioner's own self-serving testimony does not suffice to show that the information before the sentencing court was false.  In fact, the trial court, when it announced the verdict, specifically found that Petitioner showed no remorse.  (*Id.*, PageID.519.) There was ample evidence in the record to support that finding, notwithstanding Petitioner's testimony.  In that regard, Petitioner's reaction to shooting Sergeant Shirey stood in stark contrast to his remorseful reaction to shooting Mr. Bennett.

Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information.  He therefore fails to demonstrate that his sentence violated due process.  *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court).  Petitioner's Fourteenth Amendment claim has no merit.

B.    Fifth Amendment

Petitioner's Fifth Amendment claim is similarly misdirected.  The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  The protection against self-incrimination means not only that the state cannot compel an accused to testify, but also that the state cannot draw negative inferences from the accused's silence.  *Griffin v. California*, 380 U.S. 609, 615 (1965).  The proscription against

drawing negative inferences from the accused's silence extends to the sentencing phase of a criminal case. *Mitchell v. United States*, 526 U.S. 314, 327-328 (1999). With that clearly established federal law as a backdrop, the federal courts have struggled with how and when a court can rely upon a criminal defendant's lack of remorse in imposing sentence without implicating the Fifth Amendment's protection against self-incrimination. *See Miller v. Lafler*, 505 F. App'x 452, 457-462 (6th Cir. 2012) (recognizing that the *Mitchell* dissenters predicted "'a decent period of confusion in the lower courts'" and acknowledging that the "prediction . . . appears to have come true.").

The *Miller* court carefully reviewed the decisions of the Sixth Circuit and its sister circuits attempting to apply the clearly established law of *Mitchell*. The analysis is thorough and bears careful reading; however, with respect to Petitioner's argument, all that matters is the conclusion:

> Both the express language and the majority circuit interpretation of *Mitchell* favor a narrow application of the no-adverse-inference rule. Furthermore, the courts that have favored an expansive view of *Mitchell* have done so in contexts where the defendant *remained silent*. *Woodall*, 685 F.3d at 579 (holding that a defendant who did not testify during the penalty phase of his death-eligible trial was entitled to a *Carter* instruction); *Caro*, 597 F.3d at 630 (observing that consideration of a defendant's silence to prove lack of remorse may violate the Fifth Amendment); *Roman*, 371 F.Supp.2d at 51 (same); *Cooper*, 91 F.Supp.2d at 112–13 (disallowing evidence that defendant remained silent as to his blameworthiness in post-arrest statements, but allowing evidence that defendant expressed pride in killing the victim to witnesses). The state trial judge here did not hold Miller's silence against him; rather, any adverse inference drawn against Miller was based upon the content of his voluntarily given allocution. It is accordingly doubtful that Miller would have a meritorious claim even under an expansive view of *Mitchell*. *Cf. Whitten*, 610 F.3d at 199–200 (holding that the defendant's voluntary allocution constituted a limited waiver of the Fifth Amendment).

> However, the panel need not decide the correct interpretation of *Mitchell* for the purposes of this case. It is enough that fairminded jurists can and do disagree on the applicable scope of *Mitchell*. Accordingly, we cannot say that the Michigan Court of Appeals unreasonably applied the rule from that case. To the extent that

Miller asks us to expand *Mitchell*, he asks to grant relief based upon a rule that is not "clearly established Federal law, as determined by the Supreme Court of the United States." Regardless of which route we take, the result is the same: Miller is not entitled to habeas relief under § 2254(d)(1).

*Miller*, 505 F. App'x at 461-462.

The *Miller* court's reasoning applies with at least equal force here. Petitioner was not compelled to testify here. He did so voluntarily. (Trial Tr. II, ECF No. 8-4, PageID.469-471.) Petitioner waived any right against self-incrimination by his voluntary, knowing, and intelligent decision to testify. *Brown v. United States*, 356 U.S. 148 (1958). Although the court obviously did not credit Petitioner's testimony, Petitioner specifically testified regarding whether he was remorseful. (*Id.*, PageID.489.) This is certainly not a situation where the trial court drew negative inferences from a defendant's silence. No federal court, and certainly not the Supreme Court, has expanded *Mitchell* to preclude consideration of a criminal defendant's lack of remorse under these circumstances. Accordingly, Petitioner has not and cannot show that the Michigan Court of Appeals resolution of this issue was contrary to, or an unreasonable application of, clearly established federal law.

### Certificate of Appealability

Even though I have concluded that Petitioner's habeas petition should be denied, under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263

F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's denial of Petitioner's claims would be debatable or wrong. Therefore, I recommend that a certificate of appealability should be denied.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.


Dated:  June 12, 2017                      /s/ Ray Kent
                                                         RAY KENT
                                                         United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).